IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

STEVEN DOUGLAS CLOUD,

               Plaintiff,

v.

                                   CIVIL ACTION NO.: 3:17-CV-35
                                   (GROH)

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

               Defendant.

## REPORT AND RECOMMENDATION

### I.   INTRODUCTION

This case arises from the denial of Plaintiff Steven Douglas Cloud's ("Plaintiff")

Title II application for a period of disability and disability insurance benefits ("DIB"). After

Plaintiff's application proceeded through the administrative process, a United States

Administrative Law Judge ("ALJ"), Robert B. Bowling, concluded that Plaintiff was not

disabled within the meaning of the Social Security Act. Now, Plaintiff seeks judicial

review of ALJ Bowling's decision. Because ALJ Bowling's decision to deny Plaintiff's

claim for DIB is supported by substantial evidence, the undersigned recommends that

Plaintiff's motion for summary judgment be denied and Defendant's motion for summary

judgment be granted.

### II.   PROCEDURAL HISTORY

In September 2012, Plaintiff filed a claim for disability and DIB alleging that his

disability began on October 14, 2009. R. 268–75. Plaintiff's claims were denied initially

and on reconsideration. R. 99–117. Although an administrative hearing was initially held

in July 2015, that hearing was rescheduled to allow Plaintiff the opportunity to supplement the record with additional medical evidence. R. 75–98, 79. After supplementing the record, Plaintiff's administrative hearing was rescheduled but later postponed because of technical difficulties. R. 206–12, 235. Eventually, Plaintiff's counsel requested that the case be reassigned to a new ALJ to avoid further delay. R. 235–36.

ALJ Bowling was assigned to Plaintiff's case and a hearing was scheduled for July 2016. R. 244–48. Before the hearing, Plaintiff was informed of his right to subpoena persons to testify at his hearing but Plaintiff made no such request. R. 240. Plaintiff's hearing was held, as scheduled, by videoconference. R. 41–71. Less than a month later, ALJ Bowling issued a decision concluding that Plaintiff was not disabled within the meaning of the Social Security Act. R. 21–33. The Appeals Council later denied Plaintiff's request for review making ALJ Bowling's decision the final decision of the Defendant Nancy A. Berryhill ("Commissioner"), the acting Commissioner of Social Security. R. 1.

In April 2017, Plaintiff filed a pro se Complaint in this Court to obtain judicial review of the Commissioner's final decision. Compl., ECF No. 1. Plaintiff's amended application to proceed in forma pauperis was granted later that month. Order Granting Pl.'s Application, ECF No. 6. The Commissioner, through counsel Helen Campbell Altmeyer, Assistant United States Attorney, later filed her Answer and the Administrative Record of the proceedings. Answer, ECF No. 17; Admin. R., ECF No. 18. Soon thereafter, Plaintiff and the Commissioner filed their motions for summary judgment and

supporting briefs.[1] Pl.'s Br. Setting Forth Errors, ECF No. 22; Def.'s Mot. Summ. J., ECF No. 23. The Court heard oral argument on the parties' cross motions for summary judgment on September 20, 2017.

The matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule of Civil Procedure 9.02(a). Having reviewed the parties' motions and the administrative record, and having heard oral argument, the undersigned now issues the following Report and Recommendation.

### III.   <u>BACKGROUND</u>

**A.   Personal History**

Plaintiff was born on January 3, 1965, and was forty-six years old at the time he filed for DIB. R. 269. He is 5'10'' tall and weighs approximately 210 pounds. R. 45. He lives in a house with his wife and stepdaughter and has a high school education. R. 45, 47. Plaintiff served in the U.S. Air Force from 1983 until he was honorably discharged in 1988. R. 47. Although he has not had any vocational training, Plaintiff is licensed as a master electrician. R. 48. Plaintiff claims that he is unable to work due to dysthymic disorder, right shoulder pain, back and neck pain, high blood pressure, and acid reflux. R. 301.

---

[1] Although Plaintiff's pro se filing is styled as a Brief Setting Forth Errors, the undersigned interprets said brief as a motion for summary judgment.

**B.**   **Medical History[2]**

   **1.**   **Medical History Post-Dating Alleged Onset Date of October 14, 2009**

In October 2009, Plaintiff went to a VA Medical Center ("VA") with complaints of chronic back and leg pain. R. 432–37. There, Plaintiff was independent, ambulatory, and was able to move all extremities. R. 436. He did not have an impaired gait or cognitive impairment, and he exhibited full range of motion in his lumbar spine, a negative straight leg raise, normal reflexes, and full strength. R. 434, 437. He received a prescription for tramadol and was discharged. R. 434–35. Approximately one month later, Plaintiff followed up with his primary care physician to have his medication renewed. R. 430–32.

Through January 2010, Plaintiff made several more visits to the VA for treatment related to Barrett's esophagus, diarrhea, and hypertension. R. 418–30.  In January, Plaintiff refilled his medications and reported that he was moving to China for a year. R. 418–19.

Over a year later, in April 2011, Plaintiff returned from China, visited the VA, and reported pain in his neck, back, legs, arms, right knee, and left shin. R. 416–18. There, Plaintiff was diagnosed with depression and a lower back disorder. R. 418. A week later, Plaintiff saw a psychiatrist for his depression. R. 1417. Although the psychiatrist diagnosed Plaintiff with mood or bipolar disorder, his mental status examination was otherwise unremarkable. R. 1417. Plaintiff appearance and activity were normal; his attitude was pleasant, polite, and cooperative; his speech was fluent and coherent; his mood and affect were euthymic, appropriate, and congruent; his thought was

---

[2] Because the parties were not able to stipulate to the relevant medical evidence of record, the undersigned makes the following findings of fact.

spontaneous, linear, logical, and goal-directed; he had no hallucinations, delusions, or suicidal or homicidal ideations; he was alert and oriented; his memory intact; his attention and judgment were fair; and he displayed average intelligence. R. 1417–18. Ultimately, Plaintiff was prescribed medication to treat his mood or bipolar disorder. R. 1418.

The following month, Plaintiff went to the VA and had diagnostic scans of his lower back, neck, and shoulder. R. 405. The MRI of his lumbar spine showed a herniated disc at L4-5; the MRI of the cervical spine showed moderate stenosis at C5-C6; the X-ray of his right shoulder showed degenerative changes in the AC joint; and the X-ray of his left shoulder was normal. R. 403–410. Although the physician ordered a neurological consultant, R. 410, Plaintiff returned to China before that could occur, R. 506–36, 913.

In June 2011, Plaintiff had surgery in China to repair the herniated disc in his lower back, which required follow-up surgery because his incision was not healing properly. R. 535. After the follow-up surgery, Plaintiff recovered well and was discharged. R. 535.

### 2. Medical History Post-Dating the Date Last Insured of June 30, 2011

In September 2011, Plaintiff returned to the U.S. and sought musculoskeletal treatment at the VA. R. 917–18. There, Plaintiff was referred to an orthopedist. R. 918.

The following month, Plaintiff saw the orthopedist and complained of right shoulder pain. R. 913–14. Although Plaintiff's right shoulder exhibited weakness, his X-ray was unremarkable. R. 914. Plaintiff was then referred to neurology for further evaluation. R. 914. A few days later, Plaintiff sought treatment for complaints of nausea

and diarrhea but reported no other pain. R. 910–12. On examination, Plaintiff was ambulatory, exhibited no tenderness in his back, and had no edema in his extremities. R. 912. Also, in November 2011, Plaintiff visited the eye clinic at the VA and received new prescription glasses. R. 908–09. However, there was no evidence of ocular pathology. R. 908–09.

In December 2011, Plaintiff underwent a functional assessment at the VA. R. 565–635. There, Plaintiff's right shoulder exhibited some decreased range of motion but only displayed slight deficit in strength. R. 582–86. In turn, the examining physician concluded that this impairment "should not affect sedentary or light physical employment." R. 591. Similarly, Plaintiff's lower back exhibited some decreased range of motion but demonstrated full strength and no muscle atrophy. R. 593–98. In addition, his sensation and reflexes were normal, and the straight leg test was negative. R. 593–98. The physician concluded that Plaintiff would have "decreased ability to lift heavy object[s], can't go up and down ladder[s], can squat but will have to hold on to something to get up." R. 602. Plaintiff's knees and lower legs exhibited slight decrease in range of motion but full strength. R. 612–18. The physician noted that Plaintiff's only functional limitation was an inability to go up and down ladders while carrying tools. R. 624.

Plaintiff's cervical spine exhibited full range of motion with no pain. R. 626–27. In addition, his strength, sensation, and reflexes were normal. R. 629–31. Plaintiff only reported mild numbness in his right upper extremity. R. 631. In turn, the physician likewise noted that Plaintiff's only functional limitation was an inability to go up and down ladders while carrying tools. R. 635. The physician concluded, however, that Plaintiff's

other reported physical impairments (Barrett's esophagus and hypertension) did not have a functional impact on his ability to work. R. 608, 612. Mentally, the examining psychologist concluded that Plaintiff's dysthymic disorder did "not render him unable to acquire or maintain gainful employment." R. 572.

In October 2013, Muran Bijpuria, M.D., a state agency expert medical consultant, reviewed Plaintiff's medical record and opined that Plaintiff could perform a range of light work during the relevant period. R. 103–07. In February 2016, a second medical expert, David Owens, M.D., reviewed Plaintiff's medical records and concluded that Plaintiff could perform a range of light work with a sit-stand option during the relevant period. R. 1544–53. That same month, Gary Bennett, Ph.D., an expert psychologist, reviewed Plaintiff's medical records and concluded that Plaintiff's mental impairments caused mild restrictions handling simple instructions and decisions and no more than moderate restrictions handling complex instructions and decisions. R. 1535. Finally, Dr. Bennett found no more than moderate restrictions in social functioning and handling changes in the routine work setting. R. 1536.

## C.    Testimonial Evidence

### 1.  Administrative Hearing Before ALJ De Monberum

During the administrative hearing in July 2015, ALJ De Monberum acknowledged that the medical evidence of record was deficient and recommended that Plaintiff's administrative hearing be rescheduled to supplement the record. R. 77–79. ALJ De Monberum reasoned that rescheduling the hearing would allow Plaintiff to supplement the medical evidence of record. R. 79. ALJ De Monberum further reasoned that rescheduling the hearing would enable him to schedule two medical experts (physical

and psychological) to review and testify regarding the new medical evidence. R. 79. In turn, ALJ De Monberum would have sufficient evidence to make a fair decision in Plaintiff's case. R. 79. In addition, ALJ De Monberum informed Plaintiff that his medical evidence dating back to his childhood would not be relevant to his disability determination. R. 81–84.

### 2. Administrative Hearing Before ALJ Bowling

#### a. Plaintiff's Testimony

During the administrative hearing in July 2016, Plaintiff testified regarding his work history. Specifically, Plaintiff served in the United States Air Force from 1983 until his honorable discharge in 1988. R. 47. Despite no vocational training, Plaintiff learned the electrical trade on his own and is a licensed master electrician. R. 48. With that knowledge, Plaintiff worked as an electrician with a construction company from 1991 to 2007. R. 49. There, he would typically carry 100 feet of conduit pipe that weighed 25 to 30 pounds but would occasionally carry heavier weight. R. 50. In 2007, Plaintiff worked as an electrician and electrical foreman. R. 50. There, the heaviest thing Plaintiff carried was his laptop. R. 51.

Plaintiff also testified that he suffers from multiple physical ailments and the physical limitations associated with those ailments. Specifically, Plaintiff said he has tension headaches, migraines, and strained eyes. R. 52. He also grinds his teeth and his right shoulder is "messed up." R. 52–53. Plaintiff also has problems with his neck and back. R. 53. Plaintiff has had three surgeries on his back. R. 53. He also has problems with his right knee, where he has also had surgery. R. 54. Finally, Plaintiff has Barrett's esophagus and had surgery on both his feet for ingrown toenails. R. 54.

Similarly, Plaintiff testified that he suffers from various psychological ailments and the limitations associated with those ailments. Specifically, Plaintiff testified that he has (1) difficulty maintaining attention or concentration, (2) problems understanding information or instructions, and (3) problems relating to and getting along with others.

Finally, Plaintiff briefly testified regarding his daily living activities. Generally, Plaintiff wakes up in the morning and makes coffee. R. 59. He takes his medications and, because of his pain, sits in his recliner. R. 59. Once he feels better, Plaintiff gets up and drinks his coffee. R. 59. Sometimes Plaintiff will sit on the porch, watch the news, or take a nap. R. 59. During lunch, Plaintiff will move around again but, because of nausea caused by his medication, does not eat anything until dinner. R. 60. In short, Plaintiff testified that during his typical day he would "go from the recliner to the floor to the couch, back to the recliner, to the floor." R. 60. Although he can walk upstairs, Plaintiff testified that he needs to lie down once he reaches the top. R. 60.

### b.   Vocational Testimony

Ray Burger, an impartial vocational expert, also testified during the administrative hearing. R. 67–70. Initially, Mr. Burger testified regarding Plaintiff's most recent work as an electrician, a building maintenance worker, and an electrical foreman. R. 68.

After addressing Plaintiff's past relevant work, the ALJ presented Mr. Burger with several hypothetical questions for his consideration. First, the ALJ asked if an individual with the same "age, education, and work experience" as Plaintiff who is capable of light work, can perform Plaintiff's work with the following limitations:

> [T]hey could stand or walk for six hours in an eight hour workday but no more than two hours at a time. . . . [They] [c]ould sit for six hours in an eight hour workday but could not sit for more than two hours at a time. This person ca[n]

9

> only walk for 30 minutes at a time. This person can only occasionally reach in all directions with his right upper extremity. This person can only occasionally push or pull with his right upper extremity. This person can only occasionally operate foot controls with the right foot. This person can never climb ladders, ropes, or scaffolds. This person can only occasionally climb ramps and stairs. Can only occasionally stoop, kneel, crouch, balance, and crawl. This person should avoid all hazards such as unprotected heights and the use of moving machinery. This person should avoid concentrated exposure to extreme cold, extreme heat, vibration, humidity and wetness, and environmental irritants such as dusts, odors, gases, and chemicals. Work would be limited to simple, routine, and repetitive tasks performed in a work environment free of fast-paced production requirements. Involving only simple work-related decisions and with few if any workplace changes. This person should only have occasional interaction with the general public. Only occasional supervision.

R. 68–69. Mr. Burger answered in the negative. R. 69. Next, the ALJ asked if there are other jobs in the national economy that said person could perform. R. 69. Mr. Burger said that the hypothetical individual could work as a (1) mail clerk, (2) shipping and receiving clerk, or (3) general office helper. R. 69.

Plaintiff's counsel, Alan J. Nuta, also presented questions for Mr. Burger's consideration during the administrative hearing. R. 69. First, Mr. Nuta asked how much time a person could be off task to maintain his unskilled employment. R. 70. Mr. Burger answered no more than five percent. R. 70. Second, Mr. Nuta asked how many days a person could be absent and maintain his unskilled employment. R. 70. Mr. Burger responded no more than one day per month. R. 70.

## IV.   THE FIVE-STEP EVALUATION PROCESS

To be disabled under the Social Security Act, a claimant must meet the following criteria:

> [The] individual . . . [must have a] physical or mental
> impairment or impairments . . . of such severity that he is not
> only unable to do his previous work but cannot, considering
> his age, education, and work experience, engage in any
> other kind of substantial gainful work which exists in the
> national economy, regardless of whether such work exists in
> the immediate area in which he lives, or whether a specific
> job vacancy exists for him, or whether he would be hired if
> he applied for work. . . . '[W]ork which exists in the national
> economy' means work which exists in significant numbers
> either in the region where such individual lives or in several
> regions of the country.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). The Social Security Administration uses the

following five-step sequential evaluation process to determine whether a claimant is

disabled:

> (i) At the first step, we consider your work activity, if any. If
> you are doing substantial gainful activity, we will find that you
> are not disabled.
>
> (ii) At the second step, we consider the medical severity of
> your impairment(s). If you do not have a severe medically
> determinable physical or mental impairment that meets the
> duration requirement [of twelve months] . . . or a combination
> of impairments that is severe and meets the duration
> requirement, we will find that you are not disabled.
>
> (iii) At the third step, we also consider the medical severity of
> your impairments(s). If you have an impairment(s) that
> meets or equals one of our listings . . . and meets the
> duration requirement, we will find that you are disabled.
>
> [Before the fourth step, [your RFC] . . . is evaluated "based
> on all the relevant medical and other evidence in your case
> record . . . ."]
>
> (iv) At the fourth step, we consider our assessment of your
> [RFC] and your past relevant work. If you can still do your
> past relevant work, we will find that you are not disabled.
>
> (v) At the fifth and last step, we consider our assessment of
> your [RFC] and your age, education, and work experience to
> see if you can make an adjustment to other work. If you can

> make an adjustment to other work, we will find that you are
> not disabled. If you cannot make an adjustment to other
> work, we will find that you are disabled.

20 C.F.R. §§ 404.1520, 416.920. In steps one through four, the burden is on the

claimant to prove that he or she is disabled and that, as a result of the disability, he or

she is unable to engage in any gainful employment. Richardson v. Califano, 574 F.2d

802, 804 (4th Cir. 1978). Once the claimant so proves, the burden shifts to the

Commissioner at step five to demonstrate that jobs exist in the national economy that

the claimant is capable of performing. Hicks v. Gardner, 393 F.2d 299, 301 (4th Cir.

1968). If the claimant is determined to be disabled or not disabled during any of the five

steps, the process will not proceed to the next step. 20 C.F.R. §§ 404.1520, 416.920.

## V.   ADMINISTRATIVE LAW JUDGE'S DECISION

Utilizing the Social Security Administration's five-step sequential evaluation

process set forth in 20 C.F.R. § 404.1520 (2000), ALJ Bowling made the following

findings:

1.   The claimant last met the insured status requirements
     of the Social Security Act on June 30, 2011.

2.   The claimant did not engage in substantial gainful
     activity during the period from his alleged onset date
     of October 14, 2009 though his date of last insured of
     June 30, 2011 (20 CFR 404.1571 *et seq.*).
     . . .

3.   Through the date last insured, the claimant had the
     following severe impairments: degenerative joint
     disease of the right shoulder and right knee,
     degenerative disc disease of the lumbar and cervical
     spine, and dysthymic disorder (20 CFR 404.1520(c)).
     . . .

4.   Through the date last insured, the claimant did not
     have an impairment or combination of impairments

that met or medically equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

. . .

5.    After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work with standing or walking for six hours in an eight-hour workday. However, the claimant could stand or sit no more than two hours at a time and walk no more than 30 minutes at a time. He could occasionally reach in all directions with his right upper extremity. The claimant could only occasionally push or pull with his right upper extremity. He could only occasionally operate foot controls with the right foot. The claimant could never climb ladders, ropes, and scaffolds. He could only occasionally climb ramps and stairs, stoop kneel, crouch, balance, and crawl. The claimant had to avoid all hazards such as unprotected heights and the use of moving machinery. He had to avoid concentrated exposure to extreme cold, extreme heat, vibration, humidity, wetness, and environmental irritants such as dust, odors, gases, and chemicals. The claimant's work was limited to simple, routine, and repetitive tasks performed in a work environment free of fast-paced production requirements involving only simple, work-related decisions and with few, if any, work place changes. He could have only occasional interaction with the general public and co-workers. The claimant could only have occasional supervision.

. . .

6.    Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

. . .

7.    The claimant was born on January 3, 1965 and was 46 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.   Through the dated [sic] last insured, considering the claimant's age, education, work experience, and [RFC], there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569, 404.1569(a)).

. . .

11.   The claimant was not under a disability, as defined in the Social Security Act, from October 14, 2009, the alleged onset date, through June 30, 2011, the date last insured (20 CFR 404.1520(g)).

R. 23–33.

## VI.     DISCUSSION

### A.    Contentions of the Parties

In his motion for summary judgment, Plaintiff contends that ALJ Bowling's decision is not supported by substantial evidence. See generally ECF No. 22. Specifically, Plaintiff submits that ALJ Bowling: (1) did not adequately develop the record to determine whether Plaintiff was disabled, (2) was biased, (3) did not consider relevant evidence of record, (4) denied Plaintiff his right to cross-examination, (5) unnecessarily delayed Plaintiff's administrative hearing, and (6) caused him and his family unnecessary hardships entitling him to monetary damages. ECF No. 22 at 3–7, 8–9. Based on the alleged errors, Plaintiff requests that the Court grant him DIB and

$2.5 million in damages or, alternatively, remand his case for further proceedings.[3] ECF No. 22 at 11.

Conversely, the Commissioner argues that ALJ Bowling's decision is supported by substantial evidence. See generally Def.'s Br. Supp. Mot. Summ. J, ECF No. 24. Addressing Plaintiff's arguments for summary judgment, the Commissioner avers that: (1) Plaintiff has not proved that he was disabled during the relevant period, (2) the record was adequately developed, (3) ALJ Bowling was not biased and did not deny Plaintiff his right to cross examination, (4) the Court cannot reweigh the evidence, and (5) Plaintiff cannot seek monetary damages. ECF No. 24 at 7, 9, 12, 13. Accordingly, the Commissioner requests that the Court affirm ALJ Bowling's decision. Id. at 14.

## B.    The Standards

### a.  Judicial Review

In reviewing an administrative finding of no disability, the scope of review is limited to determining whether the ALJ applied the proper legal standards and whether the ALJ's factual findings are supported by substantial evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). A "factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." Coffman v.

---

[3] On September 20, 2017, the Court held oral argument on the parties' cross motions for summary judgment. During that time, Plaintiff waived his sixth and final argument that ALJ Bowling's errors caused him and his family unnecessary hardships (mental, physical, and financial), entitling him to, among other things, $2.5 million in damages. ECF No. 22 at 10–11. Thereafter, Plaintiff attempted to reassert this argument in his response to the Commissioner's proposed stipulations of fact. ECF No. 32 at 10. Because Plaintiff waived this argument on September 20, 2017, the undersigned does not address it below.

But even if Plaintiff did not waive his claim for monetary damages, Plaintiff's claim is, nevertheless, without merit. Although the Social Security Act provides for judicial review of the final decision of the Commissioner, it is well-established that the Act does not provide "a private right of action for monetary relief." Katsoulakis v. Astrue, No. 10-CV-0081 (JFB), 2011 WL 3877080, at *5 (E.D.N.Y. Aug. 31, 2011). Indeed, Plaintiff's claims for monetary damages, here, are plainly barred by the doctrine of sovereign immunity. See, e.g., Joseph v. Soc. Sec. Admin., No. CV 16-3377 (JFB) (GRB), 2017 WL 1067804, at *4–5 (E.D.N.Y. Feb. 28, 2017).

Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Likewise, a factual finding by the ALJ is not binding if it is not supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence is "'such relevant evidence as a reasonable mind might accept to support a conclusion.'" Id. (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Elaborating on this definition, the United States Court of Appeals for the Fourth Circuit has stated that substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a jury verdict were the case before a jury, then there is 'substantial evidence.'" Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). When determining whether substantial evidence exists, a court must "not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ['s]." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (citation omitted).

### b. Pro se Plaintiffs

Although Plaintiff was represented by counsel through the administrative process, Plaintiff has filed this civil action pro se. Accordingly, the Court will "construe [his] pro se pleadings and arguments liberally in light of [his] lay status, but must zealously guard [its] raison d'être as neutral and unbiased arbiters." Elam v. Barnhart, 386 F. Supp. 2d 746, 753 (E.D. Tex. 2005). "Furthermore, this Court is 'not bound to "scour the record for every conceivable error," but fundamental fairness and interests of justice require that courts not disregard obvious errors, especially when a lay litigant's ignorance may cause legal errors to go unrecognized.'" Exley v. Colvin, No. 1:15-CV-141, 2016 WL 3211798, at *3 (N.D. W. Va. May 17, 2016) (quoting Elam, 386 F. Supp.

2d at 753). "Thus, the Court reviews the ALJ's decision and considers not only the Plaintiff's articulated contentions, but also what, if anything, the Court finds should be discussed in light of the Plaintiff's lack of representation." Exley, 2016 WL 3211798, at *3.

**C.     ALJ Bowling's Decision is Supported by Substantial Evidence**

   **1.  The Record Was Adequately Developed to Determine Whether Plaintiff was Disabled**

Plaintiff's motion, liberally construed, insists that there is insufficient evidence to properly adjudicate his claim for DIB because ALJ Bowling did not adequately develop the record. ECF No. 22 at 3–7.

"When a claimant represents himself pro se, the ALJ . . . has a heightened duty to 'scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited.'" Jeffrey v. Berryhill, No. 15-15226, 2017 WL 1197830, at *9 n.4 (S.D. W. Va. Mar. 31, 2017) " (quoting Marsh v. Harris, 632 F.2d 296, 299 (4th Cir. 1980)). However, because Plaintiff was represented by counsel throughout the administrative process—including when Plaintiff appeared before ALJ Bowling—ALJ Bowling was not bound by this heightened duty. Rather, ALJ Bowling's duty to develop the record, here, was "fairly minimal." Glenn v. Colvin, No. 8:13–2099–BHH, 2015 WL 628518, at *6 (D.S.C. Feb. 12, 2015) (citation omitted). Indeed, "[a]lthough the ALJ has a duty to 'explore all relevant facts and inquire into the issues necessary for adequate development of the record,' '[he] is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record.'" Bell, 1995 WL 347142, at *4 (second alteration in original) (internal citations omitted)

(quoting <u>Cook v. Heckler</u>, 783 F.2d 1168, 1173 (4th Cir. 1986) and <u>Clark v. Shalala</u>, 28 F.3d 828, 830–31 (8th Cir. 1994)). Therefore, "'[t]he pertinent inquiry is "whether the record contained sufficient medical evidence for the ALJ to make an informed decision . . .."'" <u>Glenn</u>, 2015 WL 628518, at *6 (quoting <u>Craft v. Apfel</u>, No. 97-2551, 1998 WL 702296, at *3 (4th Cir. Oct. 6, 1998)).

After carefully reviewing the record, the undersigned concludes that the record contains sufficient medical evidence for ALJ Bowling to make an informed decision. <u>See id.</u> Although the evidence of record was insufficient at the time of Plaintiff's first administrative hearing before ALJ De Monberum, <u>see</u> R. 77–98, the record was later supplemented before Plaintiff's second administrative hearing before ALJ Bowling, R. 44. In fact, at Plaintiff's second administrative hearing, Plaintiff and his counsel confirmed that the administrative record was complete—including relevant medical evidence, which in the end totaled over 1,000 pages. R. 70–71, 399–1553. This confirmation acknowledges that any previous deficiency in the administrative record was rectified. In addition, Plaintiff has not identified any relevant medical evidence that has <u>not</u> been included in the administrative record.

Instead, Plaintiff primarily takes issue with (1) his Disability Determination Explanation at the Reconsideration level that was based on insufficient evidence and (2) ALJ Bowling's failure to call Plaintiff's wife to testify at Plaintiff's administrative hearing regarding his conditions. ECF No. 22 at 3–5. First, the state agency's determination at Reconsideration is not at issue because this Court's review is limited to ALJ Bowling's decision, which supplanted the Reconsideration determination and is the Commissioner's final decision. <u>See</u> 42 U.S.C. § 405(g); R. 1. Second, ALJ Bowling did

not have a duty to call Plaintiff's wife to testify regarding Plaintiff's conditions because Plaintiff testified about his own conditions at great length during his administrative hearing. R. 52–66. It is, of course, Plaintiff's burden to show that he is disabled within the meaning of the Social Security Act and, consequently, Plaintiff "bears the risk of nonpersuasion." Seacrist v. Weinberger, 538 F.2d 1054, 1057 (4th Cir. 1976); 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."). Therefore, if Plaintiff believed his wife's testimony was essential to proving his claim for DIB, he should have called her to testify or submitted a sworn statement like the one attached to his brief. See ECF No. 22-35 at 1–2.

Because Plaintiff and his counsel assured ALJ Bowling that he had all of the relevant evidence of record and Plaintiff has not yet identified any relevant medical evidence that has not been included in the record, the undersigned finds that ALJ Bowling did not commit reversible error by failing to fully develop the record. See Sandy v. Astrue, No. 1:08CV120, 2009 WL 2006882, at *19 (N.D. W. Va. July 9, 2009) (adopting Report and Recommendation that found no reversible error when Plaintiff assured ALJ that he had all of the relevant medical evidence of record).

## 2.  ALJ Bowling Was Not Biased[4]

Plaintiff's motion, liberally construed, argues that ALJ Bowling "demonstrated prejudice" at the administrative hearing and was, therefore, biased in rendering his decision. ECF No. 22 at 5–6. In support, Plaintiff's claims that ALJ Bowling (1) had already decided Plaintiff's case when ALJ Bowling reviewed Exhibit 15F prior to the administrative hearing, and (2) belittled Plaintiff's service record in the U.S. Air Force. ECF No. 22 at 6.

When analyzing claims of bias against an ALJ, the Court must start with two presumptions: (1) that the ALJ is not biased and (2) the ALJ exercises his "decision-making authority with honesty and integrity." Sutphin v. Astrue, No. 3:07cv171, 2009 WL 103585, at *21 (N.D. W. Va. Jan. 14, 2009) (citing Schweiker v. McClure, 456 U.S. 188, 195–96 (1982) and Withrow v. Larkin, 421 U.S. 35, 47 (1975)) (adopting Report and Recommendation finding no bias). That said, "[a]n ALJ cannot conduct a hearing if he is prejudiced or partial with respect to any party or has an interest in the matter." Monseau v. Astrue, No. 5:09CV45, 2010 WL 1286200, at *3 (N.D. W. Va. Mar. 29, 2010) (citing 20 C.F.R. §§ 409.940, 416.1440). To disqualify an ALJ, the party making the assertion must show actual bias, not just an "appearance of impropriety." See Schrader v. Astrue, No. 3:12–CV–54, 2013 WL 1192315, at *4 (N.D. W. Va. Mar. 22, 2013); see also Schweiker v. McClure, 456 U.S. 188, 196 (1982) ("[T]he burden of establishing a

---

[4] At oral argument, Plaintiff argued that the medical experts who answered interrogatories, and perhaps even the vocational expert who testified at Plaintiff's administrative hearing, were biased, or their opinions were unreliable, because the Social Security Administration ("SSA") compensates them for their services. Although Plaintiff waived this argument by not including it in his brief setting forth alleged errors, the undersigned concludes that this argument is, nevertheless, without merit. It is well established that medical and vocational experts are not biased, or their opinions unreliable, simply because the SSA compensates them for their services. See, e.g., Nichols v. Comm'r Soc. Sec. Admin., 260 F. Supp. 2d 1057, 1070 n.37 (D. Kan. 2003) (citing Borrero Arce v. Finch, 307 F. Supp. 1071, 1074–75 (D.P.R. 1969) (rejecting argument that medical and vocational experts were biased merely because they were "paid witnesses" called to testify on behalf of the Social Security Administration)).

disqualifying interest rests on the party making the assertion."); Bunnell v. Barnhart, 336 F.3d 1112, 1115 (9th Cir. 2003) ("[A]ctual bias must be shown to disqualify an administrative law judge."); Monseau, 2010 WL 1286200, at *3 ("The recusal standard for ALJs is a showing of actual bias." (citation omitted)).

After carefully reviewing the record, there is no evidence to suggest that there was an appearance of impropriety, let alone actual bias. First, ALJ Bowling did not prematurely decide Plaintiff's case when ALJ Bowling reviewed Exhibit 15F prior to Plaintiff's administrative hearing. As a practical matter, it is wholly appropriate—in fact, prudent—for an ALJ to review the administrative record, including relevant medical evidence, before the administrative hearing. Indeed, the efficiency of the administrative process depends on it. For example, had ALJ De Monberum not reviewed the administrative record prior to Plaintiff's first administrative hearing, ALJ De Monberum would not have known that the medical evidence was, at that time, insufficient. R. 77–79. Nor would he have known that it would be necessary to have medical experts testify in Plaintiff's case. R. 77–79. Likewise, had ALJ Bowling not reviewed the administrative record in advance of Plaintiff's hearing, ALJ Bowling would not have been in a position to properly question Plaintiff or the vocational expert. R. 43–61, 66–70. Further, ALJ Bowling did not misrepresent the contents of Exhibits 15F; all he did was note that "Exhibit 15F has a really really good analysis of what [the VA's] doctor found for the different areas including his shoulder, back, his esophageal conditions, hypertension, right knee, and lower leg, cervical spine, [INAUDIBLE] disorder." R. 61–62 (first alteration added). And, a careful review of the record shows that Exhibit 15F did just

that. R. 958–69 (shoulder and arm conditions), 968–79 (back, hip, knee, and leg

conditions), 980–85 (esophageal conditions), 985 (hypertension).

Second, there is no evidence in the record to suggest that ALJ Bowling appeared

impartial or was actually biased when questioning Plaintiff regarding his honorable

service to our Country in the U.S. Air Force. See R. 47–48. During the hearing, ALJ

Bowling and Plaintiff had the following relevant exchange (excerpted in full):

Q And my next question was have you ever served in the

military? Evidently you have. I've looked at your VA records.

A Yes, sir.

Q How long were you in the military?

A From '83 till '88.

Q And what branch were you in?

A Air Force.

Q And you received an honorable discharge?

A Yes, sir. I did.

Q What was your rank when you got out of the military?

A E3.

Q Okay. All right. What was your MLS? A Command and

control specialist 276.

Q [INAUDIBLE] ?

A Well, I worked in the command post so I was direct

representative of the commander of the base. So all the

information from all the units came to me. I would, you know,

brief the commander on it. He would make decisions. And

then I would enact them. Call everybody and get everything

going.

Q What rank was the commander?

A Well actually I was dual certified in TAC and NORAD. We

had the NORAD headquarters on our base. So the NORAD

commander was a two star general. And the TAC

commander was a full bird colonel.

Q Okay. And you were an E3 and you did all that?

A Well, here's - - it's the only job in the military where there's

no distinction between officer and enlisted. When we - -

when we were on duty we sat at a console. And there was

me, enlisted, and on the right side was an officer. But we

had the same exact authority.

Q Okay. All right. Have you had any vocational training

where you learned a skill or a trade?

R. 47–48.

    For better or worse, the undersigned's review of this exchange is limited.

Because the undersigned did not witness the testimony, the undersigned did not have

the opportunity to observe any relevant verbal or non-verbal cues, such as sarcasm or

tone of voice that Plaintiff found offensive. Instead, the undersigned's review is limited to

the thirty-three lines quoted above. Without more, this evidence does not create an

appearance of impropriety. Even if it did, Plaintiff has nevertheless fallen short of

meeting his burden of showing actual bias. Schrader, 2013 WL 1192315, at *4 ("Actual bias, rather than a mere appearance of impropriety, must be shown in order to disqualify an ALJ.").

Because there is no evidence that ALJ Bowling was actually biased, the undersigned finds no error.

### 3. ALJ Bowling Considered the Relevant Evidence of Record

Plaintiff argues that the evidence he submitted "was not considered or not given the level of consideration it deserved." ECF No. 22 at 8. In support of this argument, Plaintiff directs the Court's attention to a bullet point list of evidence in the record that purportedly proves Plaintiff's disability. Id. at 8–11.

Generally, "[a]n ALJ is required to consider all of the relevant medical evidence submitted by a claimant." Ryman v. Colvin, No. 2:16-CV-37 (BAILEY), 2017 WL 1682588, at *15 (N.D. W. Va. Apr. 17, 2017) (emphasis in original) (citing 20 C.F.R. § 404.1520), adopted, 2017 WL 1734039 (N.D. W. Va. May 2, 2017). "However, an ALJ is 'not obligated to comment on every piece of evidence presented.'" Id. (emphasis in original) (quoting Pumphrey v. Comm'r of Soc. Sec., No. 3:14-CV-71, 2015 WL 3868354, at *3 (N.D. W. Va. June 23, 2015)); see also Hart v. Colvin, No. 5:16-CV-32, 2016 WL 8943299, at *3 (N.D. W. Va. Sept. 14, 2016) ("[T]he ALJ is not required to comment in the decision on every piece of evidence in the record, and the ALJ's failure to discuss a specific piece of evidence is not an indication that the evidence was not considered." (citation omitted)).

Here, it is clear from the record that ALJ Bowling considered all of the relevant medical evidence. Tellingly, much of the evidence cited in Plaintiff's brief, see ECF No. 22 at 9, is medical evidence that can hardly be considered relevant because the onset

of Plaintiff's alleged disability did not occur until October 14, 2009, R. 268–75. For example, the first group of evidence cited by Plaintiff is dated December 27, 1986 (R. 1299), November 6 1987 (R. 1276), November 16, 1987 (R. 1273), June 30, 1999 (R. 1433–37), March 15, 2005 (R. 708–09), October 7 to October 14, 2005 (R. 710–15), January 1 to February 20, 2006 (R. 772–89), July 11 to August 27, 2007 (R. 790–841), and more. ECF No. 22 at 9. Like ALJ De Monberum advised Plaintiff during his first administrative hearing, medical records well beyond the two year period in question are generally not relevant to Plaintiff's claim for disability. R. 84–85.

Further, some of the other evidence that Plaintiff insists was not considered, or not given adequate consideration, was either cited by ALJ Bowling's decision or not included in the administrative record. See R. 23–29. For example, Plaintiff directs the Court's attention to Exhibits 1F (R. 409–14, 420, 426, 432, 436–37) and 2F (506–09). ECF No. 22 at 9. But ALJ Bowling's decision cited to both exhibits. R. 23–29. Indeed, ALJ Bowling cited Exhibit 1F no less than 16 times and discussed that evidence in great detail. R. 23–29.

Furthermore, it should come as no surprise that ALJ Bowling did not discuss the rest of the evidence that Plaintiff claims was not considered, see ECF No. 22 at 9–10 (citing R. 1702–04, 1704–05, 1714–1719, 1722–24, 1725, 1727, 1728, 1735, 1738–39, 1739–41, 1742–49, 1749–65, 1760, 1766, 1768–69, 1771, 1773–74, 1775–78, 1826, 1829–30, 1831–34), because none of that evidence was included in the administrative record, which totaled 1553 pages, see generally Admin R. ECF No. 18.

Because the evidence discussed above was either (1) irrelevant to the period of time that Plaintiff was allegedly disabled, (2) cited and discussed by ALJ Bowling, or (3)

not included in the administrative record, the undersigned concludes that ALJ Bowling properly considered all of the relevant medical evidence of record.

Plaintiff, however, still takes issue with how ALJ Bowling weighed the relevant evidence of record. See ECF No. 22 at 8 (arguing that the evidence was "not given the level of consideration it deserved"). As noted above, this Court's review of ALJ Bowling's decision is not without limit: We must not "reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ." Johnson, 434 F.3d at 653 (citation omitted). Indeed, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." Id. (second alteration in original) (citation omitted). Because the Court is not allowed to reweigh the relevant medical evidence, the undersigned finds no error.

In addition, after carefully reviewing the record, the undersigned further concludes that ALJ Bowling's decision is supported by substantial evidence.

As set forth above, substantial evidence is "'such relevant evidence as a reasonable mind might accept to support a conclusion.'" Perales, 402 U.S. at 401 (1971) (quoting Consol. Edison Co., 305 U.S. at 229). The Fourth Circuit has further elaborated that substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a jury verdict were the case before a jury, then there is 'substantial evidence.'" Shively, 739 F.2d at 989 (quoting Celebrezze, 368 F.2d at 642).

Here, ALJ Bowling's decision thoroughly explained which of Plaintiff's medically determinable impairments were severe or not severe and supported his reasoning with

26

detailed citations to the medical evidence of record. See R. 23–25. Next, ALJ Bowling methodically explained why Plaintiff's severe impairments did not—individually or in combination—meet or equal the severity of a listed impairment. See R. 25–27. Finally, ALJ Bowling meticulously explained, in great detail, the evidentiary basis supporting Plaintiff's RFC determination. See R. 27–32. Indeed, ALJ Bowling needed no less than five pages to explain that evidentiary basis, including a detailed discussion of which evidence was given great or little weight and why. R. 27–32. Based on the foregoing, the undersigned concludes that ALJ Bowling's decision is supported by substantial evidence. Therefore, the undersigned finds no error.

### 4. ALJ Bowling Did Not Deny Plaintiff His Right to Cross-Examination

Plaintiff claims that ALJ Bowling ostensibly denied Plaintiff his right to cross-examine two medical experts who answered interrogatories at ALJ De Monberum's request. See ECF No. 22 at 6.

Although claimants generally have the right to cross-examine witnesses during social security hearings, that right is not without limit. See generally Richardson v. Perales, 402 U.S. 389 (1971). In Perales, the Supreme Court of the United States held that a claimant who "did not take advantage of the opportunity afforded him under [the regulations] to request subpoenas," could not later argue that his rights to confrontation and cross-examination were denied. Id. at 404–05.

Here, Plaintiff's argument is based on two letters[5] discussed in his Request for Review filed with the Appeals Council on September 20, 2016.[6] Id. (citing R. 392–97). In

---

[5] Although the letters themselves are not included in the Administrative Record filed on June 20, 2017, Plaintiff's Request for Review, discusses those letters to support the same contention that Plaintiff argues here—that ALJ Bowling denied Plaintiff his right to cross-examination. ECF No. 22 at 6; R. 392–94. Because those letters are discussed in the Record, the undersigned considers them when addressing the

the first letter, Plaintiff's counsel wrote to ALJ De Monberum noting that arrangements "should" be made for the two medical experts to appear at the upcoming administrative hearing because Plaintiff has the right to cross-examination. In the second letter, after the case had been reassigned, Plaintiff's counsel made ALJ Bowling aware of that same suggestion. R. 392–94.

Unfortunately, these letters do not satisfy the requirements for a written subpoena request set forth by 20 C.F.R. § 404.950(d)(2). A proper request must include, among other things, (1) "the names of the witnesses or documents to be produced," (2) "the address of location of the witnesses or documents with sufficient detail to find them," (3) "the important facts that the witness or document is expected to prove," and (4) the reasons "why these facts could not be proven without issuing a subpoena." 20 C.F.R. § 404.950(d)(2). Because Plaintiff's letters to ALJ De Monberum and ALJ Bowling did not include the required information, see R. 393, the undersigned concludes that Plaintiff did not take advantage of the opportunity afforded him under 20 C.F.R. § 404.950(d)(2). Consequently, Plaintiff cannot now claim that his rights to cross-examination were impermissibly denied. Perales, 402 U.S. at 404–05.

Even if the letters did amount to a proper subpoena request as required by 20 C.F.R. § 404.950(d)(2), Plaintiff and his counsel did not object to the absence of the medical experts during the administrative hearing before ALJ Bowling. See generally R.

merits of Plaintiff's argument.

[6] In his request for review, Plaintiff claimed that ALJ Bowling denied his previous "request" for the medical experts to appear at the administrative hearing and cited R. 240 (Exhibit 24B, p. 4) for his authority. R. 393. This argument is without merit. Page 240 of the record is the 4th page of ALJ Bowling's Notice of Hearing sent to Plaintiff and his counsel, which, in fact, notifies Plaintiff of his right to request a subpoena and indicates what that request must include. R. 240, 237–43. If anything, ALJ Bowling's Notice of Hearing was an invitation for Plaintiff to submit a request for the very opportunity that he now claims to have been denied.

43–71. If Plaintiff believed he was being denied his right to cross-examination at the hearing, Plaintiff or his counsel would have surely raised the issue. Based on the foregoing, the undersigned finds no error.

### 5. Plaintiff's Administrative Hearing Was Not Unreasonably Delayed

Plaintiff argues that his right to an administrative "hearing before an ALJ was a [sic] grievously and unnecessarily delayed." ECF No. 22 at 5. In support, Plaintiff directs the Court's attention to various correspondence evidencing those delays (R. 369–71, 372–73, 374–75, 376, 377–79). Id.

Although the Commissioner did not respond to this argument in her brief, the question remains whether the undersigned even has the authority to address it. In Title 42, Section 405(g) of the United States Code, Congress limited this Court's power to "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." But even if this Court did have the authority to address it—without answering that question—the undersigned, nevertheless, concludes that Plaintiff's administrative hearings were not unreasonably or unnecessarily delayed.

Here, ALJ De Monberum did not take evidence or testimony at Plaintiff's first scheduled administrative hearing on July 2, 2015, because he recognized that there was insufficient medical evidence in the record, at that time, to decide Plaintiff's case. See R. 77–98. Because the medical evidence was insufficient, ALJ De Monberum thought the best course of action was to reschedule the hearing to allow Plaintiff the opportunity to supplement the record with additional medical evidence and to allow two medical experts to review that evidence so that they can testify at the rescheduled hearing. R. 77–79, 91. Although ALJ De Monberum informed Plaintiff that veterans have

29

priority when scheduling administrative hearings, ALJ De Monberum warned Plaintiff that the date of his rescheduled hearing would largely depend on the availability of the two medical experts. R. 91.

After the record was supplemented, Plaintiff's next hearing before ALJ De Monberum was scheduled for January 14, 2016. R. 206–30. Unfortunately, the hearing could not be held by videoconferencing because of technical issues. R. 235. Less than a week later, perhaps to eliminate further delays when rescheduling Plaintiff's administrative hearing, ALJ De Monberum sent the two medical experts interrogatories. R. 393. Both medical experts filed their responsive interrogatories by February 15, 2016. Later that year, in April, Plaintiff's counsel wrote two letters to ALJ De Monberum: The first questioned one of the medical expert's qualifications (specifically, the lack of a specialization), and the second suggested that arrangements be made for the medical experts to testify in person because Plaintiff's right to cross-examination.[7] R. 393. Although ALJ De Monberum was transferred to a different Office of Disability Adjudication and Review, one final attempt was made to schedule Plaintiff's administrative hearing for August 23, 2016, but Plaintiff's counsel had a scheduling conflict. R. 235. In June 2016, to prevent further delay, Plaintiff's counsel requested that Plaintiff's case be reassigned to a new ALJ. R. 235. After the case was reassigned to ALJ Bowling, Plaintiff's administrative hearing was promptly scheduled for July 22, 2016, R. 244–48, and was held as scheduled, R. 43–71.

Although there is no doubt that Plaintiff, and his family, were subjected to a one-year delay (approximately) between his first administrative hearing before ALJ De

---

[7] The undersigned addressed Plaintiff's limited right to cross-examination in Section VI.C.5, supra.

Monberum and his second administrative hearing before ALJ Bowling, the undersigned cannot conclude that this delay was unreasonable. First, the initial delay in Plaintiff's case was clearly in his best interest because if ALJ De Monberum had proceeded with an incomplete record in July 2015, it would likely be years before Plaintiff's case was remanded for a new administrative hearing after Plaintiff exhausted his administrative remedies and, perhaps, sought judicial review in this Court. See R. 93. Second, the other delays in Plaintiff's case were either the product of his own attorney or technical difficulties. See R. 235, 393. Neither of which are a basis for concluding that a one-year delay was unnecessary or unreasonable. Because the undersigned concludes that the delay in rescheduling Plaintiff's second administrative hearing was not unnecessary or unreasonable, the undersigned finds no error.

## VII.   RECOMMENDATION

For the foregoing reasons, I find that the Commissioner's decision denying Plaintiff's claim for DIB is supported by substantial evidence. Accordingly, I **RECOMMEND** that Plaintiff's Motion for Summary Judgment [ECF No. 22] be **DENIED**, Defendant's Motion for Summary Judgment [ECF No. 23] be **GRANTED**, the decision of the Commissioner be affirmed and this case be **DISMISSED WITH PREJUDICE**.

Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may file written objections identifying the portions of the Report and Recommendation to which objections are made and the basis for such objections with the Clerk of the Court. A copy of such objections should also be submitted to the Honorable Gina M. Groh, Chief United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in

waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. See 28 U.S.C. § 636(b)(1); Wright v. Collins, 766 F.2d 841, 845-48 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); see also Thomas v. Arn, 474 U.S. 140, 155 (1985).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia. Further, the Court directs the Clerk to mail a copy of this Report and Recommendation to the pro se Plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet. Furthermore, because this Report and Recommendation completes the referral from the District Court, the Clerk is directed to terminate the Magistrate Judge association with this case.

Respectfully submitted this 17th day of October, 2017.

ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE